# CHARLESTON.

## HUBBS *v.* SWABACKER.

Submitted June 3, 1898.   Decided April 5, 1902.

[Syllabus by two Judges, DENT and McWHORTER.]

1.  DEED OF TRUST—*Sale—Growing Crop Excepted.*
      If a sale of land is made under a deed of trust and at the time thereof there is an understanding had, concurred in by the purchaser, that a portion of the crop growing on such land is not included in such sale, such purchaser cannot afterwards set up a valid claim to such excluded portion of such crop under such sale.   (p. 441).

2. PURCHASER AT TRUST SALE—*Property Bought.*

    A purchaser at a trustee's sale who gets the whole amount of property that he understood he was bidding for, cannot sustain a valid legal claim to a portion of the property covered by the trust deed, which he understood at the time of the sale, was excluded therefrom.   (p. 442).

3. TRUST SALE—*Purchaser—Property Bought.*

    If a purchaser admits an understanding had at the time of his purchase growing out of a mutual misunderstanding of law or fact and according to which he made his purchase and secured the land sold, he is estopped thereafter from setting up a claim adverse to such understanding.   (p. 442).

Error to Circuit Court, Marshall County.

Action by W. N. Hubbs against Nannie Swabacker. Judgment for plaintiff. Defendant brings error.

*Reversed.*

T. S. RILEY, for plaintiff in error.

T. J. PARSONS and D. B. EVANS, for defendant in error.

DENT, PRESIDENT:

Nannie Swabacker complains of a judgment of the circuit court of Marshall County rendered November 16, 1895, in favor of W. H. Hubbs, holding that certain personal property, being the one-half of a crop of corn, was the property of said Hubbs, and not liable to her debt against W. D. Riggs.

The facts are as follows: Nannie Swabacker held a deed of trust on the farm of W. D. Riggs. She directed the trustee, J. D. Ewing, to sell the same for the payment of her debt, amounting to two thousand four hundred and seventy-five dollars and eighty cents. On the 31st of August, 1895, the same was put up for sale. T. S. Riley was present representing Nannie Swabacker. W. H. Hubbs was present as a bidder on the land. According to the agreed statement of facts he purchased with the understanding that he was to have one-half the corn and the land owner the other half. Riley as agent for Mrs. Swabacker was a party to this understanding. After his purchase Hubbs set up title to the whole of the corn. Nannie Swabacker levied on the half thereof as the property of W. D. Riggs. Hubbs then filed his petition claiming it by virtue of his purchase. The circuit court held that although he did

not so understand at the time of his purchase, yet he had in fact purchased it, and although he had given no consideration for it, it was his property. The sum for which Nannie Swabacker levied on it was the balance unpaid on the deed of trust, being a lien in virtue thereof on the property in controversy. There is no evidence that a deed was made to the purchaser Hubbs but he claims the property by the naked sale, although he did not nor did Nannie Swabacker understand he was buying it. This is a case of mutual mistake against which a court of equity, if necessity existed therefor, would relieve. It is a misunderstanding which gave birth to an understanding.

Nannie Swabacker had a lien on the property and was entitled to the proceeds thereof. She had the right to have the whole sold for the benefit of her lien, but owing to a mutual misunderstanding that the land owner would be entitled to one-half the growing crop she permitted the sale of the property and Hubbs purchased. She had the right to insist that it should be so reserved by the trustee in his deed to Hubbs. He was only entitled to what he purchased, and could claim a deed for 'no more. The trustee was acting for her, and it was his duty to secure as large a price for the property as possible, and when this misunderstanding arose, it was his duty to have made the matter plain. It does not matter whether it was a mistake of law or fact if both the interested parties were alike mistaken or agreed in their mistake, equity will relieve against it. To allow one party to take advantage of it would be to permit such party to perpetrate a fraud on the other. *Biggs* v. *Bailey,* 49 W. Va. 188, (38 S. E. 499). A mistake innocent in its inception may become fraudulent by the use that is made of it. If the one-half of the corn was worth two hundred dollars, Nannie Swabacker lost that much by reason of the mistake and Hubbs gained it. If she had lost two hundred dollars, and he had found it, he would not have thought to keep it. If she had paid him two hundred dollars by mistake he would have at once restored it to her. Yet what is the difference? If she had been alone mistaken and he had thought he was buying the whole of the corn she would have been remediless, except by a rescission of the sale under certain circumstances. When he understood that he was not buying half of the corn and he paid nothing for it, to allow him to retain it, is inequitable and unjust. It being a mistake against which equity will relieve, it is

one for which an action of *assumpsit* will lie, it being an equitable action. 2 Tuck. 129. According to his understanding one-half of the corn not having been purchased by him, he is not entitled to a judgment in this case, for he must succeed herein because he has a better right to the property than Nannie Swabacker. Growing crops of grain and vegetables are goods and chattels and not real estate and may be conveyed by verbal contract or taken and sold under execution. This is the common law. *Baunstoss* v. *Slahler's Adm'r.*, 33 Pa. St. 251, (75 Am. Dec. 592). Under the statute they cannot be levied on until severed except Indian corn after the 15th of October. When severed they can be. The levy was made after severance. Although the corn was covered by the deed of trust, it remained the property of the grantor until sold and was subject to levy and sale as the property of the grantor unless the deed of trust interfered therewith. *Doheny* v. *Atlantic Dynamite Co.*, 41 W. Va. 1. As the execution creditor and the trust creditor is the same person and the same debt is secured by both, the deed of trust is no hindrance to the sale under the execution, the liens being virtually merged. So that Nannie Swabacker can assert both the execution and trust liens as against the claimant. To have enforced her trust lien against the property, it might have been necessary to invoke the assistance of a court of equity. In the case of *Kerr* v. *Hill*, 27 W. Va. 576, it was held: "If before such sale there was an understanding between the owner of the land and a person who it was expected would buy it at such public sale, that in making the purchase of the land he was not to get the growing crop of wheat, but that it should continue to be the property of the owner of the land, then such growing crop of wheat would not pass to such purchaser with the land, but it would after such sale continue to be the property of the former owner of the land, and such understanding need not be evidenced by any writing, but may be proven by parol." In this case the understanding was between the trust creditor, the virtual owner of the property, and the purchaser that according to the custom of the country if he purchased the land he would get but one-half of the corn and the other half would be free from the sale and remain the property of the land owner and the purchaser made his purchase with this understanding. If the trustee had refused to convey to him any more than he purchased he could not have com-

pelled him to do so, and he did receive all he purchased, then why should he be allowed to set up title to that which he did not purchase simply on the bare theory that the trustee had the right to sell and therefore did sell the whole of the corn? What evidence is there that the trustee sold the whole of the corn? The deed is not in evidence. The trustee's evidence is not taken and there is no evidence on the question except that he purchased the land with the understanding that he was to have but half the corn. Who could this understanding have been with but the trustee acting for the owner and the trust creditor? The trustee was the seller and the proper one to give the information as to what he was selling. Mr. Hubbs stands in the position of plaintiff in this controversy. The burden of proof is on him to show title in himself, yet he admits that his understanding was, at the time of his purchase, that he was to have but half the corn. What evidence is there that he was to have all the corn? Nothing but that he purchased the land and some one advised him that thereby he acquired title to all the corn his understanding at the time of his purchase to the contrary notwithstanding. It was not necessary for Nannie Swabacker to introduce the trustee when the claimant admits that he understood at the time of his purchase he was not to have the property he now claims. In her behalf the trustee could only testify to an understanding already admitted. His evidence on this subject would add nothing to the claimant's admission that such was the understanding. According to the case of *Kerr* v. *Hill* it is not necessary there should be an agreement. An understanding between the parties in interest at the time of sale is sufficient. That is, the purchaser is to understand that he is not to have a certain portion of the property. This the law says is a sufficient reservation thereof. If the trustee was not a party to this understanding he was a proper witness to deny it. The fact that his evidence was not taken presumptively shows that his testimony would have been to the contrary. It would be hard on the claimant to admit such understanding and then go to work to disprove it. To admit that he and the trust creditor had such understanding but the trustee was not a party to it and therefore the understanding was not binding; in short, to admit that he did not buy the property and prove the trustee sold it and he did buy it,—this would be disproving his own admission. The truth of the

whole matter is, he did not buy the property; he so understood; he paid nothing for it, and the property is not his either in law, good conscience or equity. His whole claim rests on a pure technicality to sustain which would be paying a premium on a deficiency in moral integrity and uprightness of heart.

The judgment is reversed and this cause is remanded to the circuit court with direction to enter a judgment in favor of the defendant Nannie Swabacker against the plaintiff, W. H. Hubbs, for the production of the property to answer the defendant's execution or for the value thereof.

*Reversed and Remanded.*

BRANNON, JUDGE, (*dissenting*) :

Riggs executed a deed of trust, conveying a farm to Ewing, trustee, to secure Nannie Swabacker a debt. Under it the trustee sold the farm, and Hubbs became its purchaser. When this sale took place there was growing on the farm a crop of Indian corn, and afterwards Nannie Swabacker levied upon half the corn an execution against Riggs, and then Hubbs filed in the circuit court of Marshall County a petition asserting his right to the corn, and an interpleader between him and Nannie Swabacker was tried to test their respective rights to said corn, and judgment was given for Hubbs, thus holding the corn to be his, and not liable to the levy of the execution. Nannie Swabacker took this writ of error.

When the sale under the trust deed took place it passed to Hubbs the growing crop of corn. *Kerr* v. *Hill*, 27 W. Va. 576. But it is claimed that Riggs yet remained the owner of half of this corn, because of these special facts in the case: At the sale an attorney employed by Nannie Swabacker to attend the sale with power to bid on the property, and act for her in all matters in relation to the sale, did bid, and so did Hubbs, and the said attorney of Nannie Swabacker and Hubbs stopped bidding at a certain point, and up to this time nothing was said about the corn. Then the attorney told Hubbs that he was acting for Nannie Swabacker, and that she did not want the farm, that there was a certain sum due her, and if he would bid sufficient to pay that and her costs of sale she would not bid any more. Hubbs declined the proposition. Then the quality of the farm was discussed, and finally the question as to who would get the corn. This attorney told Hubbs that the purchaser

would get a share of the corn, whatever was the custom of the country, and Hubbs asked what the custom was, and it was told that the purchaser of the land would get half and Riggs the other half, and with this understanding Hubbs bid the farm off, but for a less price than the debt. It is claimed that under Kerr against Hill, this was a reservation from the sale of half the corn, leaving it in Riggs. This is not so. There was no sort of a contract between the attorney and Hubbs. There was no compromise of any existing right. There was no consideration for any contract withdrawing the half of the corn from the sale, if there had been such a contract. Hubbs entered into no such a stipulation. There was no proposition made by the attorney for Nannie Swabacker to Hubbs, but that to bid the amount of the debt, and that Hubbs declined. It was mere conversation, and the expressing of a legal opinion by the attorney as to who would get the corn, not a contract. The trustee made no sort of declaration withdrawing the corn from the operation of the sale, and there was no reservation. This attorney in fact had no power to make a reservation, either in law, or for his client. It is true that Hubbs bid with the mistaken understanding based on the mistaken law that Riggs would get half the corn, but this was simply a personal mistake of Hubbs', a mere opinion, with nothing at all to bind him to stand to it. The word "understanding" as used under these circumstances, does not mean that it was a contract, but that it was a mere opinion or misunderstanding of Hubbs. When afterwards the trustee informed Hubbs that his purchase would give him all the corn, what was there to cut him out of it, either in law or in morals? He had the perfect right to stand to his legal rights under the sale. It does not even appear that the trustee had the slightest knowledge of this talk, and it was a mere talk, about the legal question of who would get the corn. Very different from the case of *Kerr* v. *Hill,* holding that there may be at such a sale an oral withdrawal of the growing crop from the sale. There it had been distinctly agreed before the sale as an element of the compromise, acceded to by the purchaser, that the sale was not to pass the growing crop. There was a valid consideration, and a distinct prior agreement. The deciding test in this case is this: What did Hubbs buy? He bought just what the law sold him by a sale under a deed of trust, land and growing crop.